## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LORI ANN SCANLON MARAMANTE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 21-325-RGA |
| DELAWARE TECHNICAL COMMUNITY COLLEGE, | ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Presently before the court in this employment action arising under the Family and Medical Leave Act of 1993 ("FMLA") is Delaware Technical Community College's ("Defendant" or "DTCC") motion for summary judgment against plaintiff Lori Ann Scanlon Maramante ("Plaintiff") under Federal Rule of Civil Procedure 56.  (D.I. 37)[1] Defendant seeks judgment in its favor on Plaintiff's retaliation and interference claims under the FMLA.

For the following reasons, the court recommends GRANTING-IN-PART Defendant's motion for summary judgment on the FMLA interference claim and Plaintiff's claim for damages outside of what is authorized pursuant to 29 U.S.C. § 2617.  The court recommends DENYING the motion for summary judgment on the FMLA retaliation claim.

### I.    BACKGROUND

This case arises out of Plaintiff's removal as a Department Chair at Delaware Technical Community College and demotion to her former 10-month Instructor position upon her return from FMLA leave in November of 2019.  Plaintiff was hired on August 2, 2004, as a Program

---

[1] The briefing and filings associated with the pending motion for summary judgment are found at D.I. 38, D.I. 39, D.I. 40, D.I. 41, D.I. 46, and D.I. 47.

Manager for DTCC's "Upward Bound Math & Science Program." (D.I. 39 at A5) In 2005, Plaintiff was selected for a full-time 10-month Science Instructor position which she held for eleven years. (*Id.* at A5, A102:7-12) On October 31, 2016, Plaintiff was promoted to Instructional Coordinator for the Laboratory Technology Department. (*Id.* at A15)

The Laboratory Technology Department was subsequently divided into two programs upon the retirement of the Department head. (*Id.* at A111:20-13:12) On January 3, 2017, Plaintiff was appointed to fill the Science Department Chair position. (*Id.* at A18) She was selected by and served at the pleasure of Dr. Bobbi Barends, Vice President and Campus Director of DTCC. (*Id.*) Another individual, Linda Collins, was appointed for the other program and became the Chair of the Medical Laboratory Technician Department. (*Id.* at A111:20-13:12)

There are twenty-two Department Chairs at the Owens Campus of DTCC where Plaintiff worked. (*Id.* at A261, ¶ 5) All the Department Chairs report to Academic Dean Christy Moriarty. (*Id.* at A177:1-10) Dean Moriarty directly supervised Plaintiff's performance and reported to Dr. Bobbi Barends, who reported to DTCC President Mark Brainard. (*Id.* at A166:7-10, A177:1-10)

Plaintiff took FMLA leave in 2009 and 2012 when she adopted her children. (*Id.* at A121:5-14, A126:23-A127:13, A7-A8) She was reinstated on both occasions. (*Id.*) Due to her child's serious medical condition, Plaintiff was granted Catastrophic Leave throughout 2016. Catastrophic Leave is a program of donated leave that was available to Plaintiff following her exhaustion of paid leave. (*Id.* at A14, A122:10-A123:2) Plaintiff used combined FMLA and Catastrophic Leave from January through April of 2016 and was subsequently reinstated. (*Id.* at A13, A16-A17, A123:3-5, A124:9-13)

Dean Moriarty observed in 2018 that Plaintiff was overwhelmed as a Department Chair. (*Id.* at A204:2-205:4)  Instructional Coordinator Suzanne Marsh observed in November of 2018 that Plaintiff had missed the deadline to approve faculty textbook selections and Marsh had to complete other tasks Plaintiff had not performed.  (*Id.* at A226:13-A228:17)  Dean Moriarty expressed concerns with Plaintiff's preparation of the 2019 Science Department annual budgeting process.  (*Id.* at A23-A29)

Dean Moriarty met with Plaintiff on September 3, 2019, for her 2019 Performance Evaluation.  (*Id.* at A34-A40)  Moriarty noted timeliness issues with Plaintiff's adherence to reporting deadlines and submission of the budget proposal.  (*Id.* at A39)  Notwithstanding time management issues, Dean Moriarty indicated Plaintiff had met or exceeded "all principal accountabilities in the department chairperson role," consistent with her three prior department chair evaluations.  (*Id.*; D.I. 41 at B083-B107)  Plaintiff disagreed with Moriarty's comments concerning lack of timeliness and requested a follow-up meeting.  (D.I. 39 at A210:3-A211:1)  Plaintiff was told to submit a written response noting her disagreement with the evaluation, but she did not take further action.  (*Id.* at A49-A50)

On August 28, 2019, Plaintiff sent a text to her colleague, Linda Collins, Chair of the Laboratory Testing Department, asking her to draw blood from Plaintiff's son for medical testing.  (*Id.* at A30)  Ms. Marsh learned of the blood draw and expressed concerns about it to Dean Moriarty, who informed Dr. Barends.  (*Id.* at A217:19-A218:3)  Dr. Barends contacted DTCC General Counsel Brian Shirey and Vice President for Human Resources Dr. Valencia Beaty, requesting an investigation.  (*Id.* at A185:11-A187:22)  The investigation confirmed that Plaintiff asked Collins to conduct a blood sample, but it was not performed due to the child's anxiety.  (*Id.* at A257, ¶ 8)  The investigation also confirmed that Collins had conducted blood

draws on Plaintiff and her family members on previous occasions. (*Id.* at A257, ¶ 9) Collins did not receive a reprimand or any disciplinary action. (*Id.* at A253:9-24) The investigation concluded on September 18, 2019. (*Id.* at A51)

On September 19, Mr. Shirey, Dr. Beaty, and Dr. Barends discussed the results of the investigation. (*Id.* at A188:15-A190:2; A261-62, ¶¶ 10-15) Concerns were expressed that Plaintiff lacked judgment for involving a fellow DTCC colleague in a request to draw a blood sample on campus from Plaintiff's child. (*Id.* at A262, ¶ 13) In addition, Dr. Barends expressed other concerns with Plaintiff's performance of her duties as the Science Department Chair. (*Id.* at A262, ¶ 14) Namely, Dr. Barends indicated that Plaintiff over-delegated her duties, made untimely submissions, and struggled through the annual budget process. (*Id.*) The decision was made to remove Plaintiff from her position as Science Department Chair. (*Id.* at A258, ¶¶ 12-13) It is undisputed that no contemporaneous records of the conversation confirming the decision to terminate Plaintiff were prepared. (*Id.* at A189:3-9)

On September 26, while Plaintiff's removal as Department Chair was pending implementation by Human Resources, Plaintiff contacted Human Resources about her potential need for FMLA leave. (*Id.* at A156:2-15; A262, ¶ 18) On October 3, Plaintiff submitted completed forms requesting FMLA and Catastrophic Leave from October 4 through November 11, 2019, which was granted the next day. (*Id.* at A54-A60; A156:2-18) Plaintiff explained in her submission that her son had tick-borne infections triggering a serious health condition. (*Id.*)

When Plaintiff returned from FMLA leave on November 11, 2019, she was informed in a letter that her appointment as Department Chair was rescinded and she was returned to her full-time 10-month Instructor position in the Science Department. (*Id.* at A61) The stated grounds for her removal were (1) excessive delegation of Plaintiff's administrative duties while Plaintiff

4

pushed the Department to research her personal interest in tick-borne parasites; and (2) the

attempted blood draw from Plaintiff's son. (*Id.*) The day after her removal, Plaintiff requested

additional, intermittent FMLA leave to care for her son. (*Id.* at A62)

On November 25, 2019, Plaintiff initiated a grievance regarding her removal as Science

Department Chair. (*Id.* at A63-A67) The grievance process and subsequent appeal resulted in

unfavorable outcomes for Plaintiff. (*Id.* at A68-A86) The instant litigation followed on March

2, 2021. (D.I. 1)

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see Celotex Corp. v.

Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to

demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the

light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458,

460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not

a fact is genuinely disputed must be supported either by citing to "particular parts of materials in

the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49 (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322–23.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).

## III.   DISCUSSION

Plaintiff concedes that there is no evidence in the record to support her FMLA interference claim. (D.I. 40 at 19) Therefore, the court recommends granting Defendant's motion for summary judgment on the interference claim.

Plaintiff further concedes she is not entitled to recover damages other than those authorized by 29 U.S.C. § 2617.[2]  (D.I. 40 at 19)  Therefore, the court recommends granting Defendant's motion for summary judgment to exclude any such unauthorized damages.

The parties dispute whether summary judgment should be granted on Plaintiff's claim for FMLA retaliation.  A retaliation claim must be analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).  Under this framework, the plaintiff must first establish a *prima facie* case of retaliation by showing that "(1) she invoked her right to FMLA qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 302.  The burden then shifts to the defendant to a provide a legitimate, non-discriminatory reason for their actions.  *Id.*  The plaintiff bears the final burden of proving the defendant's stated reasons are pretextual by offering evidence from which a factfinder could reasonably "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason

---

[2] Under 29 U.S.C. § 2617, Plaintiff is limited to a recovery of damages equal to:

    (i)     the amount of –
           (I)    any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
          (II)   in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks . . . of wages or salary for the employee;
    (ii)    the interest on the amount described in clause (i) calculated at the prevailing rate; and
    (iii)   an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii)[.]

29 U.S.C. § 2617.  The statute does not provide for punitive damages or compensatory damages for emotional distress.  *See Pontes v. Rowan Univ.*, 2021 WL 4145119, at *5 (3d Cir. Sept. 13, 2021).

was more likely than not a motivating or determining cause of the employer's action." *Hinkle v. City of Wilmington*, 205 F. Supp. 3d 558, 571 (D. Del. 2016); citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

For purposes of the pending motion, Defendant concedes the first two elements of Plaintiff's retaliation claim are met. (D.I. 38 at 14)  Thus, it is uncontested that Plaintiff invoked her right to FMLA-qualifying leave and suffered an adverse employment decision.  The issue before the court is whether the adverse action was causally related to Plaintiff's invocation of her right to take FMLA leave.

### A. Plaintiff's Burden to Establish a Prima Facie Case

Defendant argues that Plaintiff cannot establish causation because the decision to remove Plaintiff as Department Chair was made on September 19, 2019, prior to Plaintiff's request for FMLA leave.  (D.I. 38 at 14)  The decision was made by Dr. Barends and Dr. Beaty, with advice from their counsel, Shirey, during a post-investigation teleconference.  (*Id.*)  According to Defendant, these decision-makers could not have been aware that Plaintiff was planning to request FMLA leave when they decided to demote her because Plaintiff did not contact Human Resources about submitting her FMLA paperwork until September 26, 2019.  (*Id.*)

Plaintiff disputes DTCC's argument and asks the court to consider the temporal proximity between the protected activity and the adverse action.  (D.I. 40 at 14)  Plaintiff was removed as Department Chair on November 11, 2019, only a few hours after returning from FMLA leave.  (*Id.*)  Accordingly, Plaintiff argues that the temporal proximity between the protected activity and the adverse employment action is sufficient by itself "to create an inference of causality and defeat summary judgment.'" (*Id.* (citing *Lichtenstein*, 691 F.3d at 307))

8

Defendant argues that the temporal proximity between Plaintiff's return from leave and receipt of her demotion is not unduly suggestive of retaliation since the retaliatory action must follow the protected activity at issue, and the date when a plaintiff is informed of the decision is irrelevant. (D. I. 38 at 14; D.I. 46 at 1)  Defendant further contends that Plaintiff has not pointed to any evidence in the record which proves that the decision to demote Plaintiff was made after September 19, 2019.  (D. I. 46 at 2)

The date on which the decision to demote Plaintiff was made is a disputed factual issue. Defendant relies solely on testimony from its own witnesses, Dr. Barends, Dr. Beaty and Mr. Shirey, to show the decision was made on September 19, 2019.  (D.I. 39 at A258, ¶ 15; A261-62, ¶¶ 10-15; A185:11-A189:2)  It is undisputed that no written report of the investigation was completed, no minutes of the conference call were taken, and no documents were prepared confirming the decision other than the letter presented to Plaintiff on November 11, 2019.  (*Id.* at A189:3-9)  DTCC's email correspondence between October 4 and October 8, 2019, shows that Dr. Barends and Dean Moriarty had to arrange for interim departmental leadership during Plaintiff's "absence" instead of during the time needed to choose Plaintiff's "replacement" as Department Chair.  (D.I. 41 at B082)  While the declaration of Dr. Beaty suggests that no one other than those on the conference call was aware of the decision to demote Plaintiff because the Human Resources department "was still preparing necessary paperwork," no such processing paperwork from the relevant time is included in the record before the court.  (D.I. 39 at A262, ¶ 18)

The Third Circuit's decision in *Lichtenstein* is analogous to the circumstances in the instant case and supports the recommended denial of summary judgment.  There, the Third Circuit vacated the district court's decision granting a motion for summary judgment on an

FMLA retaliation claim, which was based on the plaintiff's termination seven days after she applied for FMLA leave. 691 F.3d at 307. The defendant relied on testimony from its own agent to support its motion for summary judgment that the decision to terminate was made prior to plaintiff invoking leave. *Id.* at 297, 310. Because the defendant's agent's testimony was "the only evidence showing that the termination decision was made prior to" plaintiff invoking FMLA leave, the Third Circuit concluded that "a trier of fact would be justified in giving this evidence little evidentiary weight." *Id.* at 310. Similarly, evidence of the timing of the decision to demote Plaintiff in this case is limited to statements made by Defendant's own witnesses, and there is no documentary evidence on the present record to confirm the decision was made prior to Plaintiff's request for FMLA leave.

Defendant has not carried its burden of demonstrating the absence of a material fact concerning the timing of its decision to demote Plaintiff. Viewing the facts in the light most favorable to Plaintiff, a reasonable juror could plausibly find a causal link between the adverse employment action and Plaintiff's invocation of her FMLA rights. Consequently, Plaintiff has established a prima facie claim of retaliation.

### B. Defendants' Articulated Legitimate Reasons for Plaintiff's Demotion

Because Plaintiff established a prima facie retaliation case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action. *See Lichtenstein*, 691 F.3d at 302. Defendant has articulated several legitimate, non-retaliatory reasons for Plaintiff's demotion. Namely, Defendant submits evidence showing that Plaintiff did not timely perform her job duties, she over-delegated essential functions of her job to others, and she struggled with the annual budget process. (D.I. 39 at A204:2-205:4; A226:13-A228:17; A232:22-A233:22, A19-22; A198:6-18; A23-A29) Additionally, Defendant presents evidence

of Plaintiff's questionable judgment in asking another faculty member to draw blood from Plaintiff's son on campus property. (*Id.* at A30)  Defendant supports its position that the decision to demote Plaintiff was made in consideration of these circumstances. (*Id.* at A261-62, ¶¶ 10-15; A257-58 at ¶¶ 7-13)

### C.  Pretext Presents a Question of Fact

Since Defendant has articulated facially legitimate reasons for Plaintiff's demotion, the burden shifts to Plaintiff to present evidence from which a reasonable jury could conclude that the articulated reasons are a pretext for the retaliation. *Hinkle*, at 205 F. Supp. 3d at 571.  Here, Plaintiff presents evidence that Defendant's claims of mismanagement and over-delegation are pretextual.  This evidence includes Plaintiff's four performance evaluations as Department Chair, which demonstrate that she met or exceeded all of DTCC's criteria. (D.I. 41 at B083-B107) Evidence that Plaintiff over-delegated her job duties arises primarily from complaints Suzanne Marsh made to Dean Moriarty, yet there is no evidence that Moriarty followed up on these complaints with Plaintiff. (D.I. 39 at A179:10-15; A192:14-A194:6; A215:6-A216:17; A217:5-14)  Additionally, Plaintiff claims that Defendant failed to show how Plaintiff mismanaged the 2019 budget and, to the contrary, her rating on budget issues improved between her 2018 and 2019 performance evaluations. (*Id.* at A136:21-A138:7, A180:15-22; D.I. 41 at B095; B101)

Plaintiff argues her removal for her poor judgment regarding the blood draw incident was also pretextual. (D.I. 40 at 18)  According to Plaintiff, Defendant cannot claim that her actions created a potential risk to the college justifying her demotion when Defendant did not discipline her fellow Department Chair, Linda Collins, for her complicity in entertaining Plaintiff's request. (*Id.*; *see* D.I. 39 at A253:9-24)  A reasonable factfinder could determine that, based on such inconsistent treatment, Defendant's reasons for demoting Plaintiff were pretextual.

11

IV.     **CONCLUSION**

For the foregoing reasons, the court recommends granting Defendant's motion for summary judgment with respect to Plaintiff's FMLA interference claim and claim for damages outside the scope of 29 U.S.C. § 2617.  The court recommends denying Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim.  (D.I. 37)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  July 17, 2023

Sherry R. Fallon
United States Magistrate Judge