IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LORI ANN SCANLON MARAMANTE,<br><br>  Plaintiff,<br><br>  v.<br><br>DELAWARE TECHNICAL COMMUNITY COLLEGE,<br><br>  Defendant. | Civil Action No. 21-325-RGA |

## MEMORANDUM OPINION

Gary E. Junge, William D. Fletcher, Jr., SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

   Attorneys for Plaintiff.

Lauren E.M. Russell, POTTER ANDERSON & CORROON LLP, Wilmington, DE,

   Attorneys for Defendant.

September 11, 2023

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is the Report and Recommendation of a United States Magistrate Judge. (D.I. 48). It addresses Defendant's motion for summary judgment. (D.I. 37). The Report recommends that I deny-in-part the motion. (D.I. 48). Defendant filed objections to the Report. (D.I. 50). Plaintiff responded to Defendant's objections. (D.I. 51).

I will adopt the factual findings and legal conclusions in the Report. I do not separately recite any of the facts except as I see necessary to explain my decision.

## I. LEGAL STANDARDS

### A. Standard of Review

A magistrate judge may make a report and recommendation regarding a case-dispositive motion. *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 444 (3d Cir. 2005). "When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review." *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 379 (D. Del. 2014); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Under Delaware Federal Court Rules, a motion for summary judgment is considered a dispositive motion. D. Del. LR 72.1(a)(3). The Court may accept, reject, or modify the Magistrate Judge's recommendation. Fed. R. Civ. P. 72(b)(3).

### B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citation omitted). "[A] dispute about a material

fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## II. DISCUSSION

Plaintiff is Lori Ann Scanlon Maramante. Defendant is Delaware Technical Community College. Plaintiff brought retaliation and interference claims against Defendant under the Family

and Medical Leave Act of 1993 ("FMLA"). The claims are related to Defendant's decision to demote Plaintiff from her role as department chair. Plaintiff conceded that there is no evidence in the record to support her interference claim, and she conceded that she is not entitled to recover damages beyond those authorized by 29 U.S.C. § 2617. The Report held that a reasonable jury could find a causal link between Plaintiff's invocation of her FMLA rights and the demotion. The Report also held that a reasonable jury could find Defendant's reasons for the demotion to be pretextual. Hence, the Magistrate Judge recommended granting Defendant's motion for summary judgment with respect to the interference claim and claim for damages outside the scope of § 2617 and denying the motion with respect to the retaliation claim.

### A. Defendant's Objections

Defendant objects to the Magistrate Judge's findings that the date on which the decision to demote Plaintiff was made is a disputed factual issue, that the Third Circuit's decision in *Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294 (3d Cir. 2012), is analogous to this case, and that a reasonable jury could find that Defendant's legitimate, non-retaliatory reasons for the demotion are a pretext for retaliation. (D.I. 50 at 1).

Defendant contends its witnesses' testimony that the decision to demote Plaintiff was made on September 19, 2019, is uncontradicted. (*See* D.I. 50 at 1-2). Defendant additionally argues that the Magistrate Judge erroneously required Defendant to present "corroborating 'documentary evidence'" of the September 19 decision to demote. (*See id.* at 2). Defendant argues that the Magistrate Judge engaged in "improper credibility assessments" of Defendant's witnesses. (*See id.* at 3).

Defendant additionally contends that *Lichtenstein* is not analogous to the facts of this case. (*See id.* at 4-5). In *Lichtenstein*, a supervisor's testimony about a decision to terminate was

inconsistent with other evidence in the record. (*Id.* at 4). The court found a genuine issue of material fact on the causal connection element of the plaintiff's FMLA claim. (*Id.*).

Lastly, Defendant contends that no jury could reasonably find that Defendant's legitimate, non-retaliatory reasons for demotion are pretextual. (*Id.* at 5). Defendant argues that Plaintiff's positive performance evaluations from 2016 to 2018 are insufficient to establish pretext, while the 2019 evaluation includes "critical remarks" about Plaintiff. (*Id.* at 6). Defendant also contends that it is improper to compare how Defendant treated Plaintiff and Linda Collins, another department chair, after the blood draw incident because the two individuals are not similarly situated comparators. (*Id.* at 7-8). Defendant argues that evidence of an independent review of Plaintiff's grievance further shows a lack of pretext. (*Id.* at 9).

### B. Causation

Viewing the evidence in the light most favorable to Plaintiff, I agree with the Magistrate Judge that Plaintiff has established a prima facie claim of FMLA retaliation. To establish a prima facie claim, Plaintiff must show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 301-02. Defendant concedes the first two elements of Plaintiff's claim; the third element is at issue. (D.I. 48 at 8).

I agree with the Magistrate Judge's finding that the date on which Defendant decided to demote Plaintiff is a disputed factual issue. Defendant's contention that it decided to demote Plaintiff before she requested FMLA leave is inconsistent with other evidence in the record. Dr. Bobbi Barends, Dr. Valencia Beaty, and Brian Shirey provided statements under oath that they made the decision to demote Plaintiff on September 19, 2019. (*Id.* at 9). Subsequent email correspondence suggests otherwise.

On October 4, 2019, Dr. Barends emailed Christy Moriarty, the academic dean, and two other individuals regarding Plaintiff's leave. (D.I. 41 at B082). The email, which addressed "next steps for leadership coverage while [Plaintiff] is out on extended leave," described an upcoming meeting about "possible roles and responsibilities, job titles, and compensation related to any interim appointments while [Plaintiff] is away from campus on approved leave." Dr. Barends wrote that Defendant would "be appointing an interim DC [Department Chair] during her absence." (D.I. 41 at B082; *see also* D.I. 48 at 9). Ms. Moriarty replied to the email on October 8, 2019, stating that "during [Plaintiff's] absence," another individual had "agreed to serve as the interim department chair." (D.I. 41 at B082; *see also* D.I. 48 at 9).

These emails are inconsistent with Defendant's argument because they suggest Defendant still expected Plaintiff to return to work as Department Chair after a temporary FMLA leave. Hence, I agree with the Magistrate Judge that the evidence in the record is sufficient for Plaintiff to establish a prima facie case of retaliation. I also agree with the Magistrate Judge that *Lichtenstein* is an analogous case. Contradictions in the *Lichtenstein* agent's testimony are similar to the inconsistencies between Defendant's witness statements and the email correspondence. Plaintiff has the burden of proof on causation. She needs to prove that Defendant knew about the FMLA leave at the time the decision was made. The email correspondence, while thin, is sufficient to show that the decision to demote was made after the emails. The fact that three witnesses say otherwise merely creates a factual dispute; it does not require that I grant summary judgment.

### C. Pretext

Viewing the evidence in the light most favorable to Plaintiff, there is sufficient evidence from which a jury could conclude that Defendant's reasons for demoting Plaintiff are pretextual.

6

After a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. *Lichtenstein*, 691 F.3d at 302. If the defendant does so, the burden shifts to the plaintiff to prove the reasons are pretextual. *Id.* The plaintiff must offer evidence from which a jury could "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Hinkle v. City of Wilmington*, 205 F. Supp. 3d 558, 571 (D. Del. 2016) (citation omitted). It is insufficient to "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (citation omitted).

I agree with the Magistrate Judge's finding that the evidence could lead a reasonable jury to find that Defendant's claims of over-delegation and mismanagement are pretextual. Evidence in the record indicates that Defendant was aware of deficiencies in Plaintiff's work before she requested FMLA leave. First, Ms. Moriarty testified that Suzanne Marsh, an instructional coordinator, raised concerns about over-delegation to Ms. Moriarty during the summer of 2019. (D.I. 41 at B051-53; *see also* D.I. 48 at 11).[1] Ms. Moriarty "didn't discuss specifically Suzanne

---

[1] I understand that the closing date for the 2019 evaluation was June 30. (D.I. 41 at B053). Events occurring after that date would not be reflected in the 2019 evaluation. Thus, even though the evaluation says nothing to hint at concerns about "over-delegation," the over-delegation concern could have first arisen after the evaluation period.

7

Marsh's concerns" with Plaintiff. (D.I. 41 at B051). Second, the 2019 evaluation, which was signed on September 3, stated that Plaintiff "needs to be cognizant of time management and the impact that her delayed responses have on other departments and divisions (ie: budget presentations, timely responses to emails for other divisions, and follow-up with students)." (*Id.* at B105-06).[2] Notwithstanding the time management comment, Plaintiff's 2019 evaluation was positive. Plaintiff met or exceeded expectations in all categories, and the evaluation commended Plaintiff for her "exceptional knowledge" and "cohesiveness in the science department." (*Id.* at B105). Thus, the two related legitimate, non-discriminatory reasons were known by September 3, 2019. The decision to demote Plaintiff, viewing the evidence in the light most favorable to Plaintiff, was not made until after October 8, 2019, when Plaintiff was already on FMLA leave. Defendant nevertheless did not tell Plaintiff about the demotion until November 11, 2019, the day she returned from FMLA leave. (D.I. 48 at 4-5; *see* D.I. 41 at B080).

Thus, Defendant did not treat either the over-delegation concern or the time management deficiencies as much of an issue at the time Defendant learned of them. Defendant only demoted Plaintiff in November. The only thing that had changed when Defendant decided to act was that Plaintiff was on FMLA leave. A jury could conclude that Plaintiff has shown weaknesses in Defendant's proffered reasons for demotion. A reasonable jury could find Defendant's proffered reasons to be implausible and unworthy of credence. The evidence thus raises a genuine dispute of material fact as to Defendant's real reasons for demotion.

I also agree with the Magistrate Judge that the evidence could lead a reasonable jury to find that demoting Plaintiff for poor judgment in the blood draw incident was pretextual. To

---

[2] There were additional relevant comments: "Needs to focus on timeliness of reporting deadlines," and, "[N]eeds to focus on timeliness and submission of budget presentation." (*Id.* at B101). There are no similar comments in the earlier evaluations.

8

establish that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action," *Hinkle*, 205 F. Supp. 3d at 571, Plaintiff must show "that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons," *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Employees are proper comparators when they are "similarly situated in 'all respects.'" *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 92 (3d Cir. 2020) (citation omitted). "A determination of whether employees are similarly situated takes into account factors such as an employee's job responsibilities, the supervisors and decision-makers, and the nature of the misconduct at issue." *Id.* (citation omitted).

The record includes evidence that could lead a jury to conclude that Defendant treated Plaintiff differently than similarly situated employees. The Report found that Plaintiff and Ms. Collins were both department chairs. (D.I. 48 at 2). They both reported to Ms. Moriarty. (*Id.*). Ms. Collins agreed to draw a blood sample for Plaintiff's child in 2019, but the sample was not taken. (*Id.* at 3). A subsequent investigation concluded that Ms. Collins had previously conducted blood draws on Plaintiff and her family. (*Id.* at 3-4). Although Ms. Collins was not disciplined,[3] Defendant cited the blood draw attempt as one of the grounds for Plaintiff's demotion. (*Id.* at 4-5). This evidence could lead a jury to find that Plaintiff and Ms. Collins were treated differently after the blood draw incident despite participating in the same conduct,

---

[3] Defendant argues that Ms. Collins was given a verbal warning. (D.I. 50 at 8). Ms. Collins testified that she was unaware of any reprimand. (D.I. 41 at B068-69). Viewing the evidence in the light most favorable to Plaintiff, Ms. Collins was not disciplined at all.

9

having comparable positions, and reporting to the same supervisor. The evidence thus raises a genuine dispute of material fact as to Defendant's reasons for demotion.

### III. CONCLUSION

For the reasons discussed above, I will adopt the Magistrate Judge's Report. I will grant Defendant's motion for summary judgment on the FMLA interference claim and Plaintiff's claim for damages outside of what is authorized pursuant to 29 U.S.C. § 2617. I will deny the motion for summary judgment with respect to the FMLA retaliation claim. An accompanying order will be entered.